2001 SD 97

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Farrell DILLON, Defendant and Appellant.**

**No. 21308.**

Supreme Court of South Dakota.

Considered on Briefs on Jan. 8, 2001.

Decided July 25, 2001.

Mark Barnett, Attorney General, Michele K. Bennett, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Lelia L. Hood, Pierre, SD, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] A jury found the defendant guilty on five counts of first degree rape and three counts of criminal pedophilia. In

three instances, the same act of sexual penetration resulted in convictions for both pedophilia and rape. We conclude that a conviction on each offense for the same act violated the double jeopardy prohibitions in the United States and South Dakota Constitutions. We affirm in part, reverse in part, and remand for resentencing.

## Background

[¶ 2.] Farrell Dillon, the defendant, stood trial on four counts of first degree rape and three counts of criminal pedophilia for conduct committed on July 10, 1998, and three counts of first degree rape and two counts of criminal pedophilia for conduct committed on September 11, 1998.[1] He was charged with perpetrating these acts in his home against his daughter, K.D., and four of her friends, L.R., N.R., T.T., and S.R.B.

[¶ 3.] The matter surfaced on October 4, 1998. L.R. and N.R's mother asked seven-year-old N.R. if she would like to spend the night at K.D.'s home. L.R. began to cry, saying she did not want to go. The mother thought this strange because L.R. had stayed with K.D. many times before. The next day, the mother asked her eight-year-old daughter, N.R., what was wrong with her sister. N.R. responded that on the night of the school party Dillon had "tried to put his thing in [N.R.]" when she and her sister spent the night. N.R. also said that it happened to L.R. and to K.D. as well. The mother called the police.[2]

[¶ 4.] Officer Cathy Coffield interviewed L.R. and N.R. separately. Coffield learned that the school party occurred on September 11, 1998. L.R. told Coffield that after the party, L.R. and N.R. spent the night at K.D.'s. She reported that K.D.'s father "put his thing in mine." L.R. explained that this happened in Dillon's bedroom and that K.D. had taken L.R. and N.R. into his bedroom one at a time. L.R. told the officer that it also happened to her sister and K.D. Officer Coffield then spoke with N.R., who confirmed that these acts took place in Dillon's bedroom. N.R. told the officer that both K.D. and her sister, L.R., were present. L.R., on the other hand, said she was in another room when it happened to N.R. N.R. confirmed that K.D. had brought her into Dillon's bedroom and that "he did it." N.R. would not elaborate on what she meant.

[¶ 5.] Detective Sue Fox along with Deb Horan of the Department of Social Services first interviewed eight-year-old K.D. at her elementary school. Fox explained to K.D. that she wanted to talk about some things N.R. and L.R. had revealed. Horan later testified that K.D. "was very reluctant to talk to us." She described K.D.'s diffident response to questions about sexual contact: "When we would say those terms, she would almost go into the fetal position, covering up her entire face but one eye." Horan contrasted the child's earlier demeanor when she first entered the interview room: she was happy, upbeat, and friendly. K.D. would only discuss the time that L.R. and N.R. had stayed overnight and consistently said that L.R. went first, N.R. went second, and she went last.

[¶ 6.] Fox interviewed K.D. using pictures of a boy and a girl. By marking the

---

1. In the original complaint, Dillon was also charged with two counts of third degree rape of his daughter, K.D. These charges were dropped before trial.

2. N.R. and L.R.'s mother, along with Officer Cathy Coffield, Deb Horan of DSS, and Officer Sue Fox, testified to several statements the girls made. This testimony was allowed under SDCL 19–16–38, the tender years exception. The admission of this testimony is not challenged on appeal.

pictures, K.D. indicated that Dillon's penis contacted L.R.'s genitalia and that he touched N.R. and K.D. in the same manner on the buttocks. In a later interview, K.D. would only say that Dillon "did sex" with the three girls and would not speak further with Fox or Horan. As Horan took K.D. back to her class, K.D. explained that she had not lied and that Dillon had touched her, L.R. and N.R.

[¶ 7.] Fox interviewed L.R. on October 7, 1998.[3] L.R. said that Dillon had tried to put "his private in her private." She also told Fox that "it hurt, felt gross, felt sickening." L.R. remarked that this had occurred on another occasion when she spent the night on K.D.'s birthday. On that night, Dillon had done the same thing to her and to K.D., N.R., T.T., and S.R.B. At the end of the interview, however, she said she had lied and that N.R. had not been at Dillon's home on the night of K.D.'s birthday party. Fox interviewed each of the girls, and all but T.T. stated, in their own words, that Dillon had put his penis in their vaginal area. T.T. consistently denied that this happened to her, although the other girls testified that Dillon had perpetrated the same type of contact on her.

[¶ 8.] At trial, N.R. testified that on September 11, 1998, Dillon "put his penis into my crotch." She explained that this happened in his bedroom and that L.R. and K.D. were also there. S.R.B. told the jury that Dillon had "touched [her] between her legs," and on cross-examination she affirmed that Dillon's penis had gone inside her and that it had hurt. T.T. testified by using pictures, indicating that Dillon had touched L.R. and K.D. with his penis. She called this "bunning." K.D. also testified with the assistance of diagrams. She explained that "Farrell" had

touched her with his penis where she went to the bathroom. She also said that she saw this happen to L.R. and N.R.

[¶ 9.] Dillon took the stand and denied all allegations. He testified that the girls' stories were inventions, molded with the aid of law enforcement, social workers, psychologists, and doctors. He also said that his daughter, K.D., is "slow" and easily susceptible to the influence of her friends. Dillon's grandmother, who lives in the same house, confirmed that no impropriety occurred on the nights the girls stayed over. Dillon's experts testified that it would be unusual for a molester to perpetrate sexual abuse in front of other children or to have other children participate. Using the term "confabulation," one expert explained that children might give interviewers "the information they want as subsequent to the questions that are directed to them."

[¶ 10.] The jury convicted Dillon of the following charges. For the July 10, 1998 incident he was convicted of first degree rape involving K.D. and S.R.B.; he was also convicted of criminal pedophilia for his contact with S.R.B. On the September 11, 1998, allegations, he was convicted of first degree rape involving K.D., L.R., and N.R.; he was also convicted of criminal pedophilia for his contact with L.R. and N.R. The jury found him not guilty of charges relating to sexual contact with T.T. He was also acquitted of crimes against L.R. on July 10, 1998. He was sentenced to a total of 175 years, twenty years for each first degree rape conviction and twenty-five years for each criminal pedophilia conviction. All sentences were to run consecutively. Dillon appeals.

### 1. Double Jeopardy

■ [¶ 11.] Dillon contends that with a single act of sexual penetration, his convic-

---

3. L.R. was later declared unavailable for trial, as she suffered from post-traumatic stress dis-

order. She was the only girl of the five who did not testify at trial.

tions for both criminal pedophilia and first degree rape constitute multiple punishments violating the prohibition on double jeopardy. *See State v. Augustine,* 2000 SD 93, ¶ 11, 614 N.W.2d 796, 797 (citations omitted). The State responds that Dillon waived any double jeopardy challenge by failing to raise it below. Even a fundamental right may be deemed waived if it is raised for the first time on appeal. *State v. Henjum,* 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763.

[¶ 12.] Nonetheless, because of the length of the sentences and the likelihood the question will arise again, we address this issue under the plain error rule and the doctrine allowing courts to rectify constitutional error. *See* SDCL 23A–44–15 (plain error rule). *See State v. Morato,* 2000 SD 149, ¶ 27, 619 N.W.2d 655, 663 (citing *State v. Nelson,* 1998 SD 124, ¶ 7, 587 N.W.2d 439, 443). A finding of plain error requires (1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Robinson,* 1999 SD 141, ¶ 17, 602 N.W.2d 730, 735 (quotations in original). When an asserted error implicates an infringement of a constitutional right, we employ a de novo standard of review. *State v. Stanga,* 2000 SD 129, ¶ 8, 617 N.W.2d 486, 488.

[¶ 13.] The Double Jeopardy Clause of the Fifth Amendment declares that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." South Dakota's Constitution provides that "No person shall ... be twice put in jeopardy for the same offense." SD Const. Art. VI, § 9. These provisions shield criminal defendants from both multiple prosecutions and multiple punishments for the same criminal offense if the Legislature did not intend to autho-

rize multiple punishments in the same prosecution. *United States v. Dixon,* 509 U.S. 688, 735, 113 S.Ct. 2849, 2876, 125 L.Ed.2d 556 (1993); *Augustine,* 2000 SD 93, ¶ 11, 614 N.W.2d at 797.

[¶ 14.] Ultimately, when the same act violates two statutory provisions, whether one act is punishable as separate offenses raises a question of legislative intent. *See Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). Established double jeopardy jurisprudence confirms that the Legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause if it clearly expresses its intent to do so. *See id.* at 778–79, 105 S.Ct. at 2411–12, 85 L.Ed.2d 764. For example, in *Gore v. United States,* the Supreme Court upheld three consecutive sentences based on a single illicit drug sale that violated three statutes prohibiting different ways of selling illegal drugs. *See* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *See also Dixon,* 509 U.S. at 696, 113 S.Ct. at 2856, 125 L.Ed.2d 556. Still, the *Blockburger* test is "a rule of statutory construction to help determine legislative intent" and "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett,* 471 U.S. at 778–79, 105 S.Ct. at 2411, 85 L.Ed.2d 764 (citations omitted). Thus, multiple charges and punishments in a single prosecution will not violate double jeopardy if the Legislature plainly intended to impose

cumulative punishments.[4] *Hunter,* 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d 535.[5]

[¶ 15.] Dillon was convicted of criminal pedophilia and first degree rape of S.R.B. for conduct on July 10, 1998. He was also convicted of both offenses for conduct perpetrated against L.R. and N.R. on September 11, 1998. *See* SDCL 22–22–30.1 (criminal pedophilia), SDCL 22–22–1 (rape), and SDCL 22–22–2 (defining penetration).[6] Both first degree rape and criminal pedophilia are class one felonies, punishable by a maximum penalty of life in prison. The State does not dispute that Dillon was convicted of both pedophilia and rape when only one act of penetration occurred with each victim. To find if these dual convictions constitute double jeopardy, we must decide if the Legislature intended to impose multiple punishments for a single act of sexual penetration. When legislative intent to impose multiple punishments is clear, double jeopardy is not violated and further inquiry into the statutory elements is unnecessary. *Hunter,* 459 U.S. at 368–369, 103 S.Ct. at 679, 74 L.Ed.2d 535.

[¶ 16.] The statute making criminal pedophilia an offense was enacted five years ago. SL 1996, ch. 150. With this measure, the Legislature obviously meant to increase the minimum penalty for matured sex offenders; that is, child molesters whose deviant proclivities have become established, fixed, or hardened with age. Hence the age demarcation of twenty-six or older. The minimum penalty for criminal pedophilia was set at twenty-five years. SDCL 22–22–30.1. The Legislature knew that the crime of first degree rape had been on the books for decades and punished essentially the same conduct. In 1992, the minimum prison term for first degree rape was set at ten years. SDCL 22–22–1.2. The Legislature evidently concluded that sexual penetration committed by persons younger than age twenty-six would not necessarily mean that they were habituated sex offenders, deserving longer minimum prison terms for the protection of children. However, simply because the Legislature intended to increase the minimum penalty for older sex offenders committing sexual penetration, it does not mean that the Legislature intended to multiply punishments for a single act of sexual penetration.

[¶ 17.] No words in our rape and pedophilia statutes make it clear that cumula-

---

4. It is important to keep in mind that the *Blockburger* test is not conclusive in analyzing *multiple* prosecutions in the same proceeding. As the Supreme Court explained in *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983): "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a *single trial,* of cumulative punishments pursuant to those statutes." *Id.* at 359, 103 S.Ct. 673. Courts cannot impose multiple punishments for different offenses arising out of the same conduct but the Legislature can. *See Whalen v. United States,* 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980).

5. In *Whalen* the United States Supreme Court qualified the *Blockburger* test:

The assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishment in the absence of a clear indication of contrary legislative intent.

*Whalen,* 445 U.S. at 691–92, 100 S.Ct. at 1437–38.

6. SDCL 22–22–2 defines sexual penetration as "an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or any object into the genital or anal openings of another person's body."

tive punishments are explicitly intended. In *Hunter*, 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d 535, the intent was "crystal clear" because a Missouri statute specifically stated that punishment for armed criminal action was "in addition to" punishment for the accompanying felony. Likewise, in *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (W.Va.1992), such intent was evident in a statute providing that "[i]n addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection . . . ." *Id.* at 255. In our case, in the absence of similarly explicit language, we cannot say that the Legislature expressly provided for cumulative punishments.

■■■■ [¶ 18.] A second inquiry follows when legislative intent to impose multiple punishments is uncertain. In those instances, if doubt persists as it does here, we employ the *Blockburger* analysis.[7] Like all rules of statutory interpretation, the *Blockburger* test is imperfect and cannot elucidate legislative intent in every instance. *See generally* George C. Thomas, Double Jeopardy, The History, the Law 170 (1998). Nonetheless, the "rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309; *see also Augustine*, 2000 SD 93, ¶ 13, 614 N.W.2d at 798 (citations omitted). Whether conduct constitutes more than one offense is to be found by examining only the statutory elements comprising the offenses without regard to how the offenses were charged, how the jury was instructed, or how the underlying proof for the necessary elements was established. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. 306; *Roberts v. State*, 712 N.E.2d 23, 30 (Ind.Ct.App.1999).

■■■ [¶ 19.] The two statutes at issue here provide:

**SDCL 22–22–1(1)**: Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

(1) If the victim is less than ten years of age . . . .

**SDCL 22–22–30.1**: Criminal pedophilia is any act of sexual penetration accomplished with a victim less than thirteen years of age by any person twenty-six years of age or older under any circumstances not constituting incest as defined in § 22–22–1(6).

First degree rape requires proof of sexual penetration by any person against a victim under age ten. Criminal pedophilia requires proof of sexual penetration of a victim under age thirteen, and the perpetrator must be at least twenty-six. Criminal pedophilia has an element not present in first degree rape: the requirement that the perpetrator be age twenty-six or older. On the other hand, both criminal pedophilia and first degree rape have a victim age element, but the age limit is different: age ten for rape and age thirteen for pedophi-

---

7. It may be of more than passing interest that this Court adopted the same test a century ago in interpreting the double jeopardy provision of the South Dakota Constitution. SD Const. Art. VI § 9. In discussing successive prosecutions, this Court quoted a Massachusetts decision: "A single act may be an offense against two statutes, and, if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *State v. Caddy*, 15 S.D. 167, 169, 87 N.W. 927, 928 (1901) (citations omitted).

lia. Is the difference in age limits sufficiently distinct to declare that the first degree rape statute possesses an element not present in the criminal pedophilia statute? If only one statute has a different element, then the other statute becomes an included offense under double jeopardy analysis. *See* Thomas, *supra* at 170.

[¶ 20.] Courts have upheld against double jeopardy attack dual sex offense convictions for the same criminal act. In *Roberts v. State*, 712 N.E.2d 23 (Ind.App. 1999), for instance, the court ruled that under the federal double jeopardy prohibition, convictions for both rape and child molestation for the same single act were permissible. Rape required proof of threats or force, and child molestation required proof of age. *Id.* at 30. The *Roberts* court went on to rule that under Indiana's more stringent double jeopardy provision, both convictions could not be upheld, but wrote with respect to the dual convictions under the federal constitution that the defendant "cannot establish a double jeopardy violation under the *Blockburger* test...." *Id.* Again in *Spurlock v. State*, 718 N.E.2d 773 (Ind.App.1999), the court found that under the federal double jeopardy prohibition, convictions for child molestation and incest were allowable. Child molestation required proof that the victim was at least twelve years old but not more than sixteen, while incest required proof that the perpetrator engaged in the prohibited conduct with the knowledge that the victim was a "sibling." *Id.* at 779. *See also State v. Jones,* 71 Wash.App. 798, 863 P.2d 85, 101 (1993) (upholding convictions for first degree rape and child molestation). In these cases, the *Blockburger* statutory "double distinction" is indisputable. *See* Thomas, *supra* at 170.

[¶ 21.] Here, it cannot be declared with certitude that each offense requires proof of an element the other does not. *See*

*Hunter,* 459 U.S. at 366, 103 S.Ct. at 678, 74 L.Ed.2d 535. The victim age element in first degree rape is hardly so distinct from the victim age element in criminal pedophilia as to demonstrate manifest legislative intent to authorize multiple punishments. Although the age limit for a child victim of rape is different from the age limit for criminal pedophilia, the age element in first degree rape is subsumed in the older victim age element in criminal pedophilia. Anyone age twenty-six or older committing first degree rape in violation of SDCL 22-22-1(1) automatically commits criminal pedophilia as well. With no explicit indication of legislative intent to create cumulative punishments and a rule of statutory construction that fails to clarify intent any further, we invoke the rule of lenity and presume that a single act constitutes a single offense. *Staples v. United States,* 511 U.S. 600, 619, 114 S.Ct. 1793, 1804, 128 L.Ed.2d 608 (1994) (rule of lenity allows ambiguous criminal statutes to be construed in favor of accused); *see also* Thomas, *supra* at 199.

[¶ 22.] We conclude that the South Dakota Legislature has not authorized cumulative punishments for first degree rape under SDCL 22-22-1(1) and criminal pedophilia under SDCL 22-22-30.1. The Legislature apparently intended to increase the penalty for sexual penetration of a child by an older sex offender, not to multiply the number of offenses on which one could be convicted for a single act of sexual penetration. When a defendant is illegally convicted and punished twice for the same act, the court exceeds its legislatively authorized sanction, and the remedy is to vacate both the conviction and sentence on the lesser offense, leaving the conviction on the greater offense intact. *State v. Well,* 2000 SD 156, ¶ 25, 620 N.W.2d 192, 197; *State v. Groves,* 473 N.W.2d 456, 458 (S.D.1991) (citing *Ball v.*

*United States,* 470 U.S. 856, 864, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985)); *United States v. Devine,* 934 F.2d 1325, 1343 (5thCir.1991), *cert. denied,* 502 U.S. 1065, 112 S.Ct. 954, 117 L.Ed.2d 121 (1992); *United States v. Buckley,* 586 F.2d 498, 505 (5thCir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979). First degree rape is a lesser offense only in the sense that it has a lower minimum penalty. Therefore, we vacate the three first degree rape convictions duplicated in the three criminal pedophilia convictions and remand for resentencing.[8]

## 2. Prior Unproven Allegation by Victims

[¶ 23.] Before trial, the State moved in limine to prohibit the defense from disclosing to the jury a prior allegation of sexual contact made by L.R. and N.R. against their grandfather in 1994. The defense resisted, claiming that such evidence was highly relevant to show "the predisposed nature of the victims to offer inaccurate accounts of what supposedly occurred." Additionally, Dillon argued that if the trial court granted the State's motion, he would be "prohibited from impeaching the credibility of the witnesses." The court forbade any reference at trial to the prior allegation.

[¶ 24.] We review evidentiary decisions deferentially, reversing only when the court has abused its discretion. *State v. Sieler,* 397 N.W.2d 89, 91 (S.D. 1986)(string citation omitted); *see also State v. Peterson,* 1996 SD 140, ¶ 8, 557 N.W.2d 389, 391. It does not matter if we would have made a similar ruling; rather, we inquire whether "a judicial mind, in view of the law and the circumstances,

could reasonably have reached that conclusion." *Sieler,* 397 N.W.2d at 91 (citations omitted).

[¶ 25.] In his brief, Dillon offers numerous reasons this evidence should have been admitted. Nearly all of his proposed uses challenge the credibility of the five child victims. For example, he claims that evidence of the 1994 allegation by N.R. and L.R. may show the presence of "psychological transference," may present alternative explanations for behavioral manifestations, or may offer alternative reasons for the children's sexual vocabulary.[9] His position is primarily that the evidence should have been admitted "to let the jury decide whether or not the children [were] fabricating."

[¶ 26.] To use a prior allegation to challenge a victim's credibility, the allegation must be demonstrably false. *Sieler,* 397 N.W.2d at 92. A mere denial by the alleged perpetrator will not meet this standard. *Id.* (citing State v. Kringstad, 353 N.W.2d 302, 311 (N.D.1984)). Nor is it enough that the accusation was arguably false. *Id.* The 1994 allegations were investigated. Both L.R. and N.R. were interviewed, and both were seen by medical professionals and a mental health counselor. The allegations were not prosecuted, however, because in the counselor's opinion, L.R. and N.R. would not have been capable of testifying at trial. Nonetheless, this same counselor opined that the allegations were true. The State's decision to decline to prosecute the allegations does not require an inference that the charges were demonstrably false. *Accord Sieler,* 397 N.W.2d at 92 ("In some

---

8. These three first degree rape convictions are designated as counts 4, 6, and 7 in the judgments.

9. Defendant claims that L.R. and N.R. may have confused the 1994 allegations and transferred the perpetrated acts from their grandfather to Dillon.

instances even a not guilty verdict on an asserted false charge may not be enough to make the prior accusations relevant.") (citations omitted). After our review of the record, we cannot say that the trial court abused its discretion in disallowing the evidence.

### 3. Ineffective Assistance of Counsel

[¶ 27.] Dillon argues that he received ineffective assistance of trial counsel in that his attorney: (1) was unprepared for pretrial hearings and failed to cite authority in his pretrial motions; (2) stipulated to the admission of hearsay statements by the child victims, and then failed to play the videotapes of questioning; (3) failed to properly cross examine the doctor who examined the child victims; (4) failed to raise the double jeopardy claim in the circuit court; (5) made insufficient offers of proof regarding his own experts; (6) admitted in voir dire that he was inexperienced; (7) elicited damaging testimony on cross-examination and inappropriately accused the circuit court of misconduct in his motion for a new trial.[10]

[¶ 28.] Absent exceptional circumstances, we will not address an ineffective assistance claim on direct appeal. *State v. Hays,* 1999 SD 89, ¶ 14, 598 N.W.2d 200, 203 (citations omitted). We depart from this principle only when trial counsel was "so ineffective and counsel's representation 'so casual' as to represent a 'manifest usurpation' of [the defendant's] constitutional rights." *Hays,* 1999 SD 89, ¶ 14, 598 N.W.2d at 203 (citations omitted). The preferred arena for an ineffective assistance claim is a habeas corpus proceeding. *State v. Petersen,* 515 N.W.2d 687, 688 (S.D. 1994) (citations omitted). While there are many reasons for this rule, Dillon's claims illustrate its main purpose: in habeas proceedings, attorneys charged

with ineffectiveness can explain or defend their actions and strategies, and thus a more complete picture of what occurred is available for review. *Id.* Consequently, we decline to address Dillon's ineffective assistance claims at this time.

### 4. Cruel and Unusual Punishment

[¶ 29.] Because we remand for resentencing, we will not address Dillon's cruel and unusual punishment argument.

[¶ 30.] Affirmed in part, reversed in part, and remanded.

[¶ 31.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

---

**10.** Appellate counsel was not trial counsel.