2002 SD 76

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Mark WEAVER, Defendant and Appellant.**

**No. 21889.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 13, 2001.

Decided July 2, 2002.

Mark Barnett, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Mark S. Falk, Rapid City, South Dakota, Attorney for defendant and appellant.

PER CURIAM.

[¶ 1.] Mark S. Weaver appeals from a judgment of conviction of simple assault. He claims the trial court erred in denying his motion for a new trial and in allowing expert witness testimony, and further claims that his sentence unlawfully exceeds the maximum statutory limits. We affirm the judgment of conviction, but remand for correction of Weaver's sentence.

### FACTS AND PROCEDURE

[¶ 2.] Weaver met Maria Waichler in July 1999 and they began a romantic relationship. However, on January 21, 2000, Waichler obtained a protection order in Meade County against Weaver. The following month, despite the still-valid protection order, Waichler moved back into Weaver's home.

[¶ 3.] On March 17, 2000, Waichler claimed Weaver wanted her to go out for an evening on the town with him but that she refused. Around 2:00 a.m., he returned home intoxicated, put her in handcuffs and assaulted her. She begged him to take her to the hospital in Rapid City for treatment of her injuries resulting from this assault. There she confided in a nurse who called the police. Weaver spoke with the police at the hospital, giving them a false name. He was arrested and charged with false personation and violation of the protection order.

[¶ 4.] The false personation charge was later dismissed and Weaver pled guilty in Pennington County to violation of the protection order. He was sentenced to nine months in jail, with six months suspended. He was also on probation for a previous crime at this time and his probation was revoked.

[¶ 5.] On June 16, Weaver was indicted and charged in Meade County with violation of the protection order, two alternate charges of kidnapping, and aggravated assault or, alternatively, simple assault. These charges stemmed from Weaver's March 17, 2000 assault on Waichler. Following a jury trial, Weaver was convicted of violation of the protection order and simple assault and acquitted of all other charges. He was sentenced and a judgment of conviction entered.

[¶ 6.] Weaver filed a motion for new trial. The court granted the motion for a new trial on the protection order conviction, but denied the motion regarding the assault conviction. Weaver then filed a motion to dismiss the conviction for violation of the protection order based on dou-

ble jeopardy protections in the federal and state constitutions as he had earlier pled guilty to this same charge in Pennington County. The Meade County trial court dismissed the conviction for violation of the protection order and vacated the judgment. An amended judgment was entered on the simple assault conviction. Weaver was sentenced to serve one year in jail, to be served consecutively to the Pennington County sentence, with one year unsupervised probation and was ordered to pay court costs and restitution. This is the judgment from which Weaver now appeals.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 7.] **Whether the trial court erred in denying Weaver's motion for new trial on the simple assault conviction based on double jeopardy concerns.**

[¶ 8.] Weaver claims he was prosecuted, convicted and sentenced twice, once in Pennington County and once in Meade County, for the same assault on Waichler on March 17, 2000 and that this constitutes a violation of his double jeopardy protections under the federal and state constitutions. Weaver pled guilty to violation of a protection order in one county and was convicted of simple assault in another county. These are two separate crimes, containing separate elements, albeit presumably arising from the same conduct by Weaver. "Established double jeopardy jurisprudence confirms that the Legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause if it clearly expresses its intent to do so." *State v. Dillon*, 2001 SD 97, ¶ 14, 632 N.W.2d 37, 43 (citing *Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)).

[¶ 9.] Violation of a protection order is prohibited by SDCL 25–10–13. That statute provides:

If a temporary protection order or a protection order is granted pursuant to this chapter, and the respondent or person to be restrained knows of the order, violation of the order is a Class 1 misdemeanor. If any violation of this section constitutes an assault pursuant to § 22–18–1.1 [Aggravated Assault], the violation is a Class 6 felony. *Any proceeding under this chapter is in addition to other civil or criminal remedies.*

(emphasis added). The plain language of this statute, emphasized here, clearly expresses the Legislature's intent to impose multiple punishments for the same conduct as it provides that a proceeding for violation of a protection order supplements other criminal or civil remedies against the perpetrator. Weaver was also convicted of violation of SDCL 22–18–1(2), prohibiting the crime of simple assault. In pertinent part, that statute provides:

Any person who:

. . .

(2) Recklessly causes bodily injury to another;

. . .

. . . is guilty of simple assault.

Simple assault is a Class 1 misdemeanor. However, if the defendant has been convicted of, or entered a plea of guilty to, two or more violations of § 22–18–1, 22–18–1.1, 22–18–26, or 22–18–29 within five years of committing the current offense, the defendant is guilty of a Class 6 felony for any third or subsequent offense.

[¶ 10.] This Court most recently addressed double jeopardy protections under the federal and state constitutions in *Dillon*, 2001 SD 97 at ¶¶ 11–22, 632 N.W.2d at 42–47. Writing for a unanimous Court,

Justice Konenkamp noted these constitutional protections "shield criminal defendants from both multiple prosecutions and multiple punishments for the same criminal offense *if the Legislature did not intend to authorize multiple punishments in the same prosecution.*" *Id.,* 2001 SD 97 at ¶ 13, 632 N.W.2d at 43 (citing *United States v. Dixon,* 509 U.S. 688, 735, 113 S.Ct. 2849, 2876, 125 L.Ed.2d 556 (1993); *State v. Augustine,* 2000 SD 93, ¶ 11, 614 N.W.2d 796, 797) (emphasis added). We explained:

> In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court held that 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.' *See also Dixon,* 509 U.S. at 696, 113 S.Ct. at 2856, 125 L.Ed.2d 556 (1993). Still, the *Blockburger* test is 'a rule of statutory construction to help determine legislative intent' and 'is not controlling when the legislative intent is clear from the face of the statute or the legislative history.' *Garrett* [*v. United States* ], 471 U.S. [773,] 778–79, 105 S.Ct. [2407,] 2411, 85 L.Ed.2d 764 [ (1985) ] (citations omitted). Thus, multiple charges and punishments in a single prosecution will not violate double jeopardy if the Legislature plainly intended to impose cumulative punishments. [*Missouri v.*] *Hunter,* 459 U.S. [359,] 368–69, 103 S.Ct. [673,] 679, 74 L.Ed.2d 535 [ (1983) ].
>
> · · ·
>
> '[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a

single trial, of cumulative punishments pursuant to those statutes.' *Id.* at 359, 103 S.Ct. 673. *Courts cannot impose multiple punishments for different offenses arising out of the same conduct but the·Legislature can. See Whalen v. United States,* 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980).

*Id.,* 2001 SD 97, at ¶ 14 and n. 4, 632 N.W.2d at 43–44 and n. 4 (emphasis added). "When legislative intent to impose multiple punishments is clear, double jeopardy is not violated and further inquiry into the statutory elements is unnecessary." *Id.,* 2001 SD 97 at ¶ 15, 632 N.W.2d at 44 (citing *Hunter,* 459 U.S. at 368–69, 103 S.Ct. at 679, 74 L.Ed.2d 535).

[¶ 11.] This appeal involves not only multiple punishments, but multiple prosecutions. As the Supreme Court and this Court have recognized, the constitutional protection against double jeopardy "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Cates,* 2001 SD 99, ¶ 7, 632 N.W.2d 28, 33. Weaver claims violation based on the second type of government action.

[¶ 12.] In *Brown v. Ohio,* 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977), a case procedurally similar to the one before us, the Court reviewed a double jeopardy claim involving two prosecutions. Brown stole a vehicle in East Cleveland, Ohio and was caught driving it in Wickliffe, Ohio. He was charged with joyriding in Wickliffe, pled guilty, and was sentenced to a fine and thirty days in jail. Upon his release from jail, he returned to East Cleveland to face charges of auto theft and

joyriding, resulting from the same incident. Brown objected on grounds of "former jeopardy," but pled guilty to the auto theft charge with the understanding that the trial court would consider his former jeopardy claim on a motion to withdraw his plea. *Id.*, 432 U.S. at 163, 97 S.Ct. at 2224, 53 L.Ed.2d 187. Brown was not allowed to withdraw his plea and he appealed. Applying established double jeopardy analysis and examining the Ohio statutes, the Supreme Court reversed Brown's conviction, holding that, joyriding was a lesser included offense of the crime of auto theft and did not require proof of an additional fact which the other did not. Under these facts, the Double Jeopardy Clause barred Brown's second prosecution. The Court stated:

> The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. Where successive prosecutions are at stake, the guarantee serves 'a constitutional policy of finality for the defendant's benefit.' That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, and from attempts to secure additional punishment after a prior conviction and sentence.

*Id.*, 432 U.S. at 165–66, 97 S.Ct. at 2225, 53 L.Ed.2d 187 (internal citations omitted). The Court applied *Blockburger* as the established test to determine whether the same act or transaction constitutes a violation of two distinct statutory provisions, instructing that the test is "whether each provision requires proof of an additional fact that the other does not. . . . If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes . . . ." *Id.*, 432 U.S. at 166, 97 S.Ct. at 2225–26, 53 L.Ed.2d 187 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975)). *See also Dixon*, 509 U.S. at 696, 113 S.Ct. at 2856, 125 L.Ed.2d 556 (applying double jeopardy analysis and *Blockburger* to multiple prosecutions). In *U.S. v. Bennett*, 44 F.3d 1364 (8thCir.1995), the Eighth Circuit Court of Appeals applied the *Blockburger* double jeopardy analysis to multiple prosecutions and held:

> Our 'same offense' analysis, however is unaffected by whether this case involves multiple punishments or successive prosecution. It is well settled that 'if two offenses are the same under the *Blockburger* test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions.' Likewise, the opposite must also be true: if two offenses are not the same for purposes of barring multiple punishment, they necessarily will not be the same for purposes of barring successive prosecutions. This is so 'because it is embarrassing to assert that the single term "same offence" . . . has two different meanings—that what is [not] the same offense is yet . . . the same offense.'

*Id.* at 1372, n. 7 (quoting *Brown, supra* and citing *Dixon, supra*).

■ [¶ 13.] Here, the two offenses are not the same and do not bar successive prosecution. Unlike the statutes applicable to Brown's crime in Ohio, in Weaver's

case there is no lesser included offense situation. Legislative intent is made clear in the last sentence of SDCL 25–10–13: "Any proceeding under this chapter is *in addition to* other civil or criminal remedies." (emphasis added). The proceeding against Weaver for violation of the protection order was *in addition to* the subsequent criminal prosecution against him for simple assault.

[¶ 14.] Under the *Blockburger* test, and as we recognized in *Dillon, supra,* further inquiry into the statutory elements is unnecessary where the legislature has clearly intended to impose multiple punishments. *Garrett,* 471 U.S. at 779, 105 S.Ct. at 2411, 85 L.Ed.2d 764; *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679, 74 L.Ed.2d 535, *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981); *Whalen,* 445 U.S. at 691–92, 100 S.Ct. at 1437–38, 63 L.Ed.2d 715. The *Garrett* Court instructed that for double jeopardy purposes:

> Where the same conduct violates two statutory provisions, *the first step* in the double jeopardy analysis *is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense*.... We have recently indicated that *the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislature history.*

471 U.S. at 778–79, 105 S.Ct. at 2411, 85 L.Ed.2d 764 (emphasis added). "Thus, when the *Blockburger* analysis arrives at a result contrary to the 'language, structure, and legislative history' of the statute, the '*Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of the legislature.' " *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253, 259 (1992) (quoting *Garrett,* 471 U.S. at 779, 105 S.Ct. at 2412, 85 L.Ed.2d 764). We

hold the legislature in this state has clearly expressed its intent in this regard and that the proceeding against Weaver for violation of the protection order is permissible in addition to a criminal proceeding for simple assault, without violating double jeopardy. However, as both parties proceeded directly into this second part of the recognized double jeopardy analysis, *Blockburger's* "same elements" test will be applied to the facts in this case. As will be shown, Weaver's argument also fails under this test.

■ [¶ 15.] *Blockburger* instructs that where the same act or transaction constitutes a violation of two distinct statutes, the Court must determine whether each statute requires proof of an additional fact that the other does not. "[I]f not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon,* 509 U.S. at 696, 113 S.Ct. at 2856, 125 L.Ed.2d 556. SDCL 25–10–13 requires a protection order to have been granted and the person·restrained to have knowledge of the order. Beyond that, the terms of the order control what constitutes a violation. The terms of the protection order in this case prohibited Weaver from being within 500 feet of Waichler, possessing any guns or knives, or

> committing any acts resulting in physical harm, bodily injury or attempting to cause physical harm or bodily injury, or from inflicting fear of imminent physical harm or bodily injury against family or household members, SDCL 25–10–1[.] [1]

[¶ 16.] According to the terms of the protection order restraining Weaver, his violation was complete when he, with knowledge of the order, came within 500 feet of Waichler. He did not have to also "recklessly cause bodily injury" to her, a required element of simple assault. In

---

**1.** This is the definition of "domestic abuse" provided by the cited statute.

fact, the complaint filed by the State charging him with violation of the order (and with false personation which was later dismissed) states:

> COUNT I: That on or about the 17th day of March, 2000, in the County of Pennington, State of South Dakota, MARK S. WEAVER did commit the public offense of VIOLATION OF PROTECTION ORDER in that (s)he did then and there, knowing that a protection order had been granted pursuant to SDCL 25–10 *restraining him/her from interfering with Maria Waichler,* breach said order, in violation of SDCL 25–10–13[.]

(emphasis added). *The complaint does not charge Weaver with assault.* The State needed only prove existence of the order, his knowledge of it, and his proximity to her. Similarly, the criminal offense of simple assault under SDCL 22–18–1(2) did not require the victim to be a member of Weaver's household or family, nor would Weaver have been required to know of the existence of a protection order. Each crime, violation of the protection order and simple assault, was able to be committed without committing the other, separate criminal offense.

[¶ 17.] Weaver cites *Dixon,* 509 U.S. at 692, 113 S.Ct. at 2854, 125 L.Ed.2d 556, a consolidated case and plurality opinion of the Supreme Court, claiming the holding as it relates to defendant Foster is supporting authority for his argument. A careful reading of that case and comparison of the statutes and applicable facts shows otherwise. Analyzing Foster's claims, the *Dixon* Court held:

> The foregoing analysis [of Dixon's claims under double jeopardy] obviously applies as well to Count I of the indictment against Foster, charging assault in violation of § 22–504, based on the same event that was the subject of his prior

contempt conviction for violating the provision of the CPO forbidding him to commit simple assault under § 22–504. The subsequent prosecution for assault fails the *Blockburger* test, and is barred.

The remaining four counts in Foster, assault with intent to kill (Count V; § 22–501) and threats to injure or kidnap (Counts II–IV; § 22–2307), are not barred under *Blockburger.* As to Count V: Foster's conduct on May 21, 1988, was found to violate the Family Division's order that he not 'molest, assault, or in any manner threaten or physically abuse' his wife. At the contempt hearing, the court stated that Ana Foster's attorney, who prosecuted the contempt, would have to prove, first, knowledge of a CPO, and, second, a willful violation of one of its conditions, here simple assault as defined by the criminal code. On the basis of the same episode, Foster was then indicted for violation of § 22–501, which proscribes assault with intent to kill. Under governing law, that offense requires proof of specific intent to kill; simple assault does not.

*Similarly, the contempt offense required proof of knowledge of the CPO, which assault with intent to kill does not. Applying the Blockburger elements test, the result is clear: These crimes were different offenses, and the subsequent prosecution did not violate the Double Jeopardy Clause.*

Counts II, III, and IV of Foster's indictment are likewise not barred. These charged Foster under § 22–2307 (forbidding anyone to 'threate[n] ... to kidnap any person or to injure the person of another or physically damage the property of any person') for his alleged threats on three separate dates. *Foster's contempt prosecution included charges that, on the same dates, he violated the CPO provision ordering that*

*he not 'in any manner threaten' Ana Foster. Conviction of the contempt required willful violation of the CPO—which conviction under § 22–2307 did not; and conviction under § 22–2307 required that the threat be a threat to kidnap, to inflict bodily injury, or to damage property—which conviction of the contempt (for violating the CPO provision that Foster not 'in any manner threaten') did not. Each offense therefore contained a separate element, and the Blockburger test for double jeopardy was not met.*

*Dixon,* 509 U.S. at 700–03, 113 S.Ct. at 2858–59, 125 L.Ed.2d 556 (emphasis added) (footnotes and internal citations omitted).[2]

[¶ 18.] The trial court made this distinction in its memorandum decision and order granting Weaver's motion for a new trial on the violation of protection order conviction and denying his motion for a new trial on simple assault conviction. Therein, the court observed,

As stated above [citing the 'in addition to' language], SDCL 25–10–13 contemplates additional criminal penalties. The elements necessary to prove violation of the statute does not necessarily require proof of simple assault. Here, in fact, Defendant was charged with 'Reckless Simple Assault' (SDCL 22–18–1(2)) in Meade County. The protection order violation(s) require proof of additional facts. No matter how you slice it—the violation of a protection order, whether as a result of assault or otherwise, is neither the same offense or less-

er-included offense of simple assault, or vice versa.

As previously noted, the trial court later amended its order to dismiss the Meade County judgment of conviction for violation of the protection order, with prejudice, based on double jeopardy as Weaver had previously pled guilty to violation of the protection order in Pennington County.

[¶ 19.] Weaver has failed to establish a double jeopardy violation regarding the subsequent prosecution for simple assault where he has failed to establish under *Blockburger* that the same elements are necessary to prove both simple assault and violation of the protection order. These crimes constitute different offenses and the subsequent prosecution did not violate Weaver's double jeopardy protections. On this issue, the trial court is affirmed.

ISSUE TWO

[¶ 20.] **Whether the trial court erred in allowing the State's expert witness to testify on domestic abuse.**

■ [¶ 21.] Weaver filed a pretrial motion, citing relevancy and the standards for admission of expert witnesses under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to preclude the State's expert witness, Carol Maicki, from testifying. Maicki testified at a pretrial *Daubert* hearing after which the trial court performed the balancing test under SDCL 19–12–3 (Rule 403) and applied the *Daubert* guidelines regarding expert witnesses. The court found Maicki's proffered testi-

---

**2.** *Dixon,* issued in 1993, overruled the "same conduct" rule from *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) for analyzing double jeopardy claims. Contrary to Weaver's argument, *State v. Sprik,* 520 N.W.2d 595 (S.D.1994) does not provide the analysis he claims for support and does

not hold that *Grady* provides the conclusive rule for double jeopardy analysis in South Dakota. *Sprik,* without discussion, cited to this Court's decision in *State v. Floody,* 481 N.W.2d 242 (S.D.1992), which cited to *Grady,* which was overruled the year after *Floody* was decided.

mony would be relevant and more probative than prejudicial, and approved her to testify regarding domestic abuse, specifically the "cycle of violence" and "battered women's syndrome." However, she was not permitted to opine whether Waichler was a battered woman and the parties were prohibited from asking her hypothetical questions. Weaver claims Maicki's testimony was not relevant and only offered to bolster Waichler's credibility.

[¶ 22.] "Any evidence tending to connect an accused with the commission of a crime is relevant and probative." *State v. Bunger*, 2001 SD 116, ¶ 10, 633 N.W.2d 606, 609 (citing *State v. Anderson*, 2000 SD 45, ¶ 97, 608 N.W.2d 644, 671). Weaver was on trial for assaulting his live-in girlfriend, Waichler. The record shows that after the protection order was in place in late January 2000, Weaver persuaded Waichler to try several times to get the court to rescind the order, which the court would not do. Waichler then recanted allegations of Weaver's January assault on her. The State argued at the motion hearing that Carol Maicki was being offered as an expert witness to explain to a jury why Waichler would recant allegations of abuse and resume cohabitation with Weaver a month after obtaining a protection order against him. Certainly, this was relevant and probative evidence.

[¶ 23.] Weaver also claims Maicki's testimony was only offered to bolster Waichler's credibility. However, Maicki did not testify regarding Waichler's credibility and she was not permitted to give her opinion whether Waichler was a battered woman or answer any hypothetical questions. No. evidence supports Weaver's claim.

[¶ 24.] Finally, Weaver claims Maicki lacked reliability as an expert witness and therefore the trial court erred in allowing her to testify. A trial court has broad discretion in admitting expert testimony. Expert witness testimony is admitted if it " 'will assist the trier of fact to understand the evidence or to determine a fact in issue' " and if it " 'rests on a reliable foundation.' " *State v. Guthrie*, 2001 SD 61, ¶ 85, 627 N.W.2d 401 (quoting SDCL 19–15–2; *Daubert*, 509 U.S. at 597, 113 S.Ct. at 2799, 125 L.Ed.2d 469). However, "a trial judge must ensure that an expert's testimony rests on both 'a reliable foundation and is relevant to the task at hand. . . . [W]hen the trial court is ruling on the admissibility of an expert opinion, the trial court needs to exercise its gatekeeping function.' " *Rogen v. Monson*, 2000 SD 51, ¶ 13, 609 N.W.2d 456 (quoting *Kuper v. Lincoln–Union Electric Co.*, 1996 SD 145, ¶ 41, 557 N.W.2d 748, 760).

[¶ 25.] *Daubert* provides guidelines for courts to assess an expert witness, which we recently reviewed in *Guthrie*, 2001 SD 61 at ¶ 35, 627 N.W.2d at 416:

(1) whether the method is testable or falsifiable; (2) whether the method was subjected to peer review; (3) the known or potential error rate; (4) whether standards exist to control procedures for the method; (5) whether the method is generally accepted; (6) the relationship of the technique to methods that have been established as reliable; (7) the qualifications of the expert; and (8) the non-judicial uses to which the method has been put. *See Daubert*, 509 U.S. at 593–95, 113 S.Ct. at 2796–98, 125 L.Ed.2d 483–84. *Daubert's* list of factors may not each apply to all experts in every case. *Rogen v. Monson*, 2000 SD 51, ¶ 28, 609 N.W.2d 456, 462–63 (Konenkamp, J. concurring)(citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999)).

Weaver is critical of the trial court for not making an "explicit consideration," apparently meaning on the record, of the nonexclusive guidelines listed above. However, an express rendering of the trial court's decisionmaking process is not required. *See Argus Leader v. Miller,* 2000 SD 63, ¶ 29, n. 16, 610 N.W.2d 76, 88, n. 16 (citing *Morrison v. Kimmelman,* 650 F.Supp. 801, 807 (D.N.J.1986)) (court's specific finding is supported by the record and further explanation not required to uphold the order).

[¶ 26.] Maicki, with a bachelor's degree in psychology, informed the court at the pretrial motion hearing that she had been working in the field of domestic abuse of women for the past twenty-five years. In that time she helped start the first rape crisis center which shortly thereafter became the first battered women's shelter in Wyoming. She was appointed state administrator for the new domestic violence programs in Wyoming, a job she held for four years. She then moved to this state where she worked for the Coalition Against Domestic Violence and Sexual Assault as its state coordinator, a job she held for another four years. During all of this time she also helped on a volunteer basis at women's shelters. She has been interim director of programs involving violence against women in Sturgis and Rapid City. She currently has a consulting business in this field and is writing a manual for seventy-seven domestic violence and rape coalitions across the nation, entitled *Cultural Competency,* which will help workers better communicate with Native American women. In 2000, she started a Native American women's shelter, Standing Strong Woman House, in Rapid City. She has also published a manual for the State Department of Health in coordination with the Coalition Against Domestic Violence, entitled *First Responder to Rape,* to assist law enforcement, shelter workers, and prosecutors. She has lobbied in this state concerning this issue and, following election as state senator from Meade County (1991–92), helped pass two victims' crime bills. She has provided public education and training and has been the recipient of such training. She testified to having worked with thousands of women victims of domestic abuse in the past twenty-five years.

[¶ 27.] Maicki explained the concepts of "battered woman's syndrome" and "cycle of violence." Both concepts have been subjected to peer review, are not new concepts in the field of domestic abuse counseling and are accepted in the field. *See State v. Burtzlaff,* 493 N.W.2d 1 (S.D.1992) (pre-*Daubert,* two expert witnesses permitted to testify on "battered spouse syndrome"). Maicki stated she has testified in approximately fifty cases involving domestic abuse, in federal, state, military and tribal courts, since 1985. She has testified as an expert witness in this field at least three times previously in the Fourth Circuit.

[¶ 28.] The trial court did not abuse its discretion in approving Maicki as an expert witness with the above-noted parameters limiting her testimony. There is no claim by Weaver, or evidence in the record, that she testified beyond these limits. The trial court is affirmed on this issue.

ISSUE THREE

[¶ 29.] **Whether Weaver's sentence unlawfully exceeds the maximum statutory limits.**

[¶ 30.] Weaver was sentenced to the maximum term of one year following his conviction for the crime of simple assault, a Class 1 misdemeanor. This sentence was ordered to be served consecutively to his sentence for violation of the protection order. Weaver was also sentenced, under

the simple assault conviction, to one-year unsupervised probation and assessed court costs and restitution.

[¶ 31.] Weaver claims, and the State agrees, that his sentence exceeds the statutory maximum. SDCL 22–6–2 provides the maximum penalty for a Class 1 misdemeanor is "one year imprisonment in a county jail or one thousand dollars fine, or both[.]" This statute further provides:

> The court in imposing sentence on a defendant who has been found guilty of a misdemeanor shall order, in addition to the sentence that is imposed pursuant to the provisions of this section, that the defendant make restitution to any victim in accordance with the provisions of chapter 23A–28.

Pursuant to a plain reading of the statute, the court's sentencing of Weaver to one year imprisonment in the county jail and one year of unsupervised probation, upon completion of the imprisonment, is in excess of the statutory maximum.[3] However, Weaver is incorrect where he claims the sentence must be imposed concurrently with his Pennington County conviction for violation of the protection order. As noted in the discussion of double jeopardy above, this is not the "same offense" and the trial court has the discretion whether to order the sentence to run concurrently or consecutively. SDCL 22–6–6.1.

[¶ 32.] Weaver also claims the trial court's order of restitution was unlawful and a violation of his due process rights because it included an "open-ended" order that he pay restitution "not to exceed $15,000" rather than providing him a fixed amount, and that the "Crime Victim's Compensation Fund," to which he is or-

dered to pay this money, does not meet the statutory definition of "victim." SDCL 23A–28–2(5); *State v. Sprecher*, 2000 SD 17, 606 N.W.2d 138. SDCL 23A–28–3 provides for a hearing where the defendant contests the amount of recommended restitution; Weaver claims he was not granted this hearing though he represented himself at the sentencing hearing and was given the opportunity to raise this issue with the sentencing court.

[¶ 33.] He further claims the costs ordered were excessive and not supported by the record. SDCL 23A–27–26 provides a defendant may be ordered to pay part or all of the prosecution costs with some statutory limitation on what items may be included in those costs. *See State v. Ryyth*, 2001 SD 50, 626 N.W.2d 290.

[¶ 34.] Since this appeal must be remanded for resentencing, these issues of costs and restitution may be taken up by Weaver and the State with the trial court at that time. The judgment and conviction for simple assault is affirmed and this matter is remanded for correction of Weaver's sentence and consideration of his claims regarding restitution and costs ordered.

[¶ 35.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, and GORS, Acting Justice, participating.

[¶ 36.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

**3.** We distinguish our decision here which forecloses the imposition of a maximum sentence *and* probation from our conclusion in *State v. Macy*, 403 N.W.2d 743 (S.D.1987) which permits the imposition of a probation-ary term longer than a maximum sentence if the term is imposed as part of a suspended imposition of sentence *as an alternative in lieu of sentencing* freely accepted by a defendant as part of a plea agreement.