GILBERTSON, Chief Justice.
[¶ 1.] Defendant Jose Garza was convicted of first-degree arson and first-degree felony murder in a single trial for intentionally setting fire to an occupied structure and the resulting death of an unidentified victim in the fire. Arson served as the underlying felony to support the felony murder charge. Garza was given concurrent life sentences without parole for each conviction. The circuit court denied Garza’s motion to correct an illegal sentence, rejecting his claim that the concurrent sentences violated the Double Jeopardy Clause. We affirm.
FACTS AND PROCEDURAL HISTORY
[¶ 2.] The underlying facts of this case were described in State v. Garza, 1997 S.D. 54, ¶¶ 2-4, 563 N.W.2d 406:
At approximately 9:00 a.m. on the morning of February 24, 1995, Jose Sanchez (Sanchez) hosted a party at his apartment located at 231 South Spring in Sioux Falls, South Dakota. Throughout the morning and early afternoon hours, a large amount of alcohol was consumed by the occupants and guests. Garza arrived at Sanchez’ apartment around 4:00 p.m. and found the majority of the participants intoxicated. Garza consumed alcohol with the other guests after his arrival.
Later, Ansellmo Montinegro (Montineg-ro) and Garza had an altercation. After Montinegro broke the strings of a guitar, Garza grabbed it and broke it further. Another participant at the party attempted to stop Garza and a further altercation ensued. Next, the evidence showed that Garza went to the stove, turned on the gas, lit all four burners, and threatened he could burn down the house. Also, Garza was observed putting his lighter up to the fuse box in the apartment, but the fuse box door was closed by another person at the party to deter this act.
At approximately 9:30 p.m., Garza left the party. Garza was later identified as having purchased forty-five cents worth of gasoline at a nearby 7-11 store at 11:00 p.m. Within twenty minutes of his purchase, the apartment building at 231 South Spring was on fire. All of the occupants escaped the burning building, except for John Doe, who died of car-boxyhemoglobin poisoning.
[¶ 3.] The State charged Garza with one count of first-degree felony murder, with arson as the underlying felony, and one count of first-degree arson. SDCL 22-16-4 (1995); SDCL 22-33-1 (1995). The jury found Garza guilty of both offenses, and he received a life sentence without parole for each. Garza raised four issues on direct appeal, but did not challenge his sentence as violating the Double Jeopardy Clause. Garza, 1997 S.D. 54, ¶ 5, 563 N.W.2d at 408. This Court affirmed his conviction on all issues raised on direct appeal. Id. ¶ 35, 563 N.W.2d at 413. In November of 2011, Garza filed a motion to coirect illegal sentence, alleging that the imposition of sentences for both felony murder and arson violated the Double Jeopardy Clause. The trial court is *836 sued an order denying the motion. Garza filed a timely appeal to this Court, alleging that the trial court erred in denying his motion to correct illegal sentence.
ANALYSIS AND DECISION
[¶ 4.] 1. Whether this Court has jurisdiction over an appeal from an order denying a motion to correct illegal sentence.
[¶ 5.] As an initial matter, the State argues that this Court does not have jurisdiction over this matter because SDCL 23A-32-2 gives a defendant the right to appeal only from a final judgment of conviction. We squarely rejected this same argument in State v. Kramer and held that challenges to a trial court’s order granting or denying a motion to correct an illegal sentence under SDCL 23A-31-1 (Rule 35) may properly come before this Court on appeal. 2008 S.D. 73, ¶¶ 7-8, 754 N.W.2d 655, 657. See also State v. Tibbetts, 333 N.W.2d 440, 441 (S.D.1983) (allowing appeal of circuit court’s denial of a request to correct an illegal sentence under SDCL 23A-31-1). As we noted in Kramer, this Court has consistently reviewed these challenges to the legality of a sentence. 2008 S.D. 73, ¶ 8, 754 N.W.2d at 657 (citing State v. Sieler, 1996 S.D. 114, 554 N.W.2d 477; State v. Moon, 514 N.W.2d 705 (S.D.1994); State v. Thomas, 499 N.W.2d 621 (S.D.1993); In re Application of Grosh, 415 N.W.2d 824 (S.D.1987)). Accordingly, we reject the State’s argument that we should decline to consider Garza’s appeal.
[¶ 6.] However, Garza asserts that the proper remedy in this case would be to vacate both the conviction and sentence for first-degree arson, leaving the conviction for first-degree felony murder intact. South Dakota law authorizes a court to provide a more limited remedy. SDCL 23A-31-1 (Rule 35). Under that rule, a court may “correct an illegal sentence at any time,” but not an improper conviction. Id. (emphasis added). See also Kramer, 2008 S.D. 73, ¶ 7, 754 N.W.2d at 657 (“A defendant’s motion to correct an illegal sentence does not permit a challenge to the underlying conviction.”).[1] Garza’s challenge to the underlying conviction is not cognizable under the procedural mechanism used in this case. Accordingly, our review is limited to whether the sentence in this case was illegal and should be vacated.
[¶ 7.] 2. Whether imposition of sentences for felony murder and the underlying felony of arson violates the constitutional prohibition against double jeopardy.
[¶ 8.] Garza argues that the South Dakota Legislature did not intend to authorize multiple punishments for the single act of burning a building. Specifically, he argues that the Legislature intended arson and felony murder to be treated and punished as a single offense. Garza contends that “the murder charge is really ‘aggravated arson’ — arson plus a resulting death.” Consequently, he asserts that imposing multiple punishments for his single act violated the Double Jeopardy Clause. We disagree.
[¶ 9.] Because Garza alleges constitutional violations, raising issues of legislative intent and statutory interpretation, we review his claims under the de novo standard. State v. Long Fox, 2013 S.D. 40,
*837 ¶ 11, 832 N.W.2d 55, 58; Kramer, 2008 S.D. 73, ¶ 11, 754 N.W.2d at 658.
[¶ 10.] The double jeopardy prohibition in the Fifth Amendment to the United States Constitution, and Article VI, Section 9, of the South Dakota Constitution, “protect[s] against three types of governmental abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.” State v. Johnson, 2007 S.D. 86, ¶ 12, 739 N.W.2d 1, 6 (quoting State v. Lafferty, 2006 S.D. 50, ¶ 4, 716 N.W.2d 782, 784). See also Jones v. Thomas, 491 U.S. 376, 380-81, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989). In the first two contexts — a second prosecution subsequent to acquittal or conviction — the United States Supreme Court has consistently found a violation of the Double Jeopardy Clause unless each of the charged offenses “requires proof of a fact which the other does not.” Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (citing Gavieres v. United States, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911)). If such.proof is required, then the single act may be an offense against two statutes and “an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.” Id. (quoting Morey v. Commonwealth, 108 Mass. 433, 434 (Mass.1871)).
[¶ 11.] The analysis is different, however, in the context of multiple punishments for the same criminal act. When “it is not contended that [a defendant’s] right to be free from multiple trials for the same offense has been violated[,]” but rather where cumulative sentences are imposed in a single trial, “the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.” Missouri v. Hunter, 459 U.S. 359, 365-66, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). Accordingly, “[t]he question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed.” Id. at 368, 103 S.Ct. at 679 (quoting Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981)); State v. Simons, 313 N.W.2d 465, 467 (S.D.1981) (quoting Albernaz, 450 U.S. at 344, 101 S.Ct. at 1145). While a question of multiple prosecutions, then, is a constitutional question that must be resolved according to the Blockburger test, the determination of whether the same criminal act can be punished under two separate statutes in one trial is a question of state law to be determined in state courts. See Hunter, 459 U.S. at 368, 103 S.Ct. at 679 (citing O’Brien v. Skinner, 414 U.S. 524, 531, 94 S.Ct. 740, 743, 38 L.Ed.2d 702 (1974)) (acknowledging that the United States Supreme Court was bound by the Missouri Supreme Court’s conclusion that Missouri statutes authorized multiple punishments for one criminal act). Thus, the primary issue before this Court is whether the South Dakota Legislature intended first-degree arson and felony murder to be separately punishable offenses, not whether they constitute the same offense under the federal formulation of the Blockburger test.
[¶ 12.] We have an “[established double jeopardy jurisprudence^ which] confirms that the Legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause if it clearly expresses its intent to do so.” State v. Deneui, 2009 S.D. 99, ¶ 65, 775 N.W.2d 221, 247 (quoting State v. Dillon, 2001 S.D. 97, ¶ 13, 632 N.W.2d 37, 43). “The true intent of the legislature is ascertained primarily from *838 the language of the statute.” Johnson, 2007 S.D. 86, ¶ 13, 739 N.W.2d at 6 (quoting Lafferty, 2006 S.D. 50, ¶ 6, 716 N.W.2d at 784). At the time of Garza’s conviction, South Dakota’s felony murder statute provided in pertinent part:
Homicide is murder in the-first degree when perpetrated without authority of law and with a premeditated design to effect the death of the person killed or of any other human being, or when committed by a person engaged in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary, kidnapping, or unlawful throwing, placing, or discharging of a destructive device or explosive.
SDCL 22-16-4 (1995). South Dakota’s first-degree arson statute provided:
Any person who intentionally sets fire to or burns or causes to be burned any occupied structure, knowing the same to be occupied at the time, is guilty of arson in the first degree. Arson in the first degree is a Class 1 felony.
SDCL 22-38-1 (1995). Although the Legislature has authorized the imposition of either concurrent or consecutive sentences when a defendant is convicted of two or more offenses, SDCL 22-6-6.1, we are unable to find any expressly stated legislative intent to support the imposition of multiple penalties.
[¶ 13.] However, a “second inquiry follows when legislative intent to impose multiple punishments is uncertain.” Dillon, 2001 S.D. 97, ¶ 18, 632 N.W.2d at 45. In discerning legislative intent, “we employ the Blockburger analysis.” Id. Accordingly, we ask “whether each provision requires proof of an additional fact which the other does not.” Deneui, 2009 S.D. 99, ¶ 65, 775 N.W.2d at 248 (quoting Dillon, 2001 S.D. 97, ¶ 13, 632 N.W.2d at 43). “[T]wo offenses may be said to have occurred only if each statute requires proof of an additional fact which the other does not.” State v. Hoffman, 430 N.W.2d 910, 911 (S.D.1988). See also Johnson, 2007 S.D. 86, ¶ 16, 739 N.W.2d at 7; State v. Weaver, 2002 S.D. 76, ¶¶ 10-19, 648 N.W.2d 355, 359-63; Dillon, 2001 S.D. 97, ¶ 14, 632 N.W.2d at 43; State v. Augustine, 2000 S.D. 93, ¶¶ 13-24, 614 N.W.2d 796, 798-99; State v. Darby, 1996 S.D. 127, ¶ 16, 556 N.W.2d 311, 317. Although we commonly refer to this analysis as the Blockburger test, in reference to its application by the United States Supreme Court, see Blockburger, 284 U.S. at 304, 52 S.Ct. at 182,[2] this usage can be misleading. In utilizing the Blockburger test to ascertain the intent behind South Dakota law, we part ways with the federal analysis to the extent that we examine “only the statutory elements comprising the offenses without regard to how the offenses were charged, how the jury was instructed, or how the underlying proof for the necessary elements was established.” Dillon, 2001 S.D. 97, ¶ 18, 632 N.W.2d at 45. In other words, while our Blockburger “formula” is the same, the “variables” we feed into that formula differ slightly from the federal application.[3] Thus, while a federal applica *839 tion of Bloekburger might lead us to conclude that two South Dakota statutes punish the same offense for the purpose of determining the constitutionality of subsequent prosecutions, South Dakota’s application of Bloekburger, under the same facts, might lead us to conclude that the two statutes were meant to punish different offenses for the purpose of determining whether punishment under both statutes exceeds the degree of punishment intended by the South Dakota Legislature.
[¶ 14.] According to our application of the Bloekburger test in this case, and for the purpose of ascertaining the intent behind South Dakota law, the plain language of the statutes reveals that each statutory offense requires proof of an element not required to establish a violation of the other. It is possible to commit a felony murder without committing a first-degree arson and vice versa.[4] First-degree felony murder requires the State to prove that the death of an individual occurred, an element not required to prove first-degree arson. First-degree arson requires the burning of an occupied structure, which is not a required element of felony murder. First-degree felony murder does not necessarily require proof of the burning of an occupied structure because first-degree felony murder can instead be proven with any of a number of enumerated completed or attempted crimes. SDCL 22-16-4 (1995). In other words, because arson is sufficient to serve as the predicate felony to felony murder, but is not necessary, it cannot be said that the burning of an occupied structure is a requirement of felony murder. See Simons, 313 N.W.2d at 467-68 (noting, in a prosecution charging both murder and the commission of a felony while armed for the shooting death of the victim, that “[w]hile the use of a firearm was necessarily alleged in the information, it is not an element of the statutory offense of murder because a homicide can be perpetrated by myriad means”). Accordingly, Garza’s challenge fails under our application of the Bloekburger test, because each offense necessitates “proof of an additional fact which the other does not.” Dillon, 2001 S.D. 97, ¶ 14, 632 N.W.2d at 43. Contrary to Garza’s position, first-degree arson is not a necessarily included lesser offense of felony murder. As we quoted in Johnson, “[Although the two statutes may be violated together, they are not necessarily violated together.” 2007 S.D. 86, ¶18, 739 N.W.2d at 8 (quoting State v. Armendariz, 140 N.M. 182, 141 P.3d 526, 533 (2006)).
[¶ 15.] Garza argues that, under the United States Supreme Court’s decision in Whalen v. United States, we should conclude that multiple punishments in this case would violate double jeopardy. 445 U.S. 684, 691-92, 100 S.Ct. 1432, 1437-38, 63 L.Ed.2d 715 (1980). In Whalen, the defendant was convicted of rape and felony murder with rape as the underlying felony. The Supreme Court, interpreting a Dis *840 trict of Columbia felony-murder statute similar to South Dakota’s, concluded that a felony murder in that case could not be proven without proving all the elements of rape, and therefore each statutory offense did not require the proof of a fact which the other did not. Id. at 693-94, 100 S.Ct. 1432. The Supreme Court rejected the government’s argument that not all felony murders required proof of a rape, and therefore the crimes could be charged as separate offenses with separate punishments. Id. Therefore, the Blockburger test was not met and the imposition of multiple punishments violated double jeopardy. Id.
[¶ 16.] Garza argues that this Court should come to the same result as Whalen.[5] Although Whalen presented the United States Supreme Court with a similar statutory scheme to the one challenged in this case, we decline to apply the holding of Whalen. First we point out that, as a federal enclave, the laws of the District of Columbia derive from acts of Congress and are inherently federal in nature. Consequently, the Supreme Court determined that Congress intended the “rule of statutory construction stated by [the Supreme Court] in Blockburger v. United States ” to apply when determining whether two statutes punish the same offense in the District of Columbia. Whalen, 445 U.S. at 691, 100 S.Ct. at 1437. Second, and in contrast, we again note that questions of legislative intent are left to the determination of state courts. Hunter, 459 U.S. at 368, 103 S.Ct. at 679. See also Whalen, 445 U.S. at 687-88, 100 S.Ct. at 1435 (recognizing that the United States Supreme Court is “barred from reviewing a state court’s interpretation of a state statute”). Thus, we are not bound by the United States Supreme Court’s application of Blockburger to the District of Columbia statutes. See id. (noting that the Supreme Court had “utilized [the Blockburger ] rule only to limit a federal court’s power to impose convictions and punishments when the will of Congress is not clear” (emphasis added)). Looking to this Court’s application of Blockburger, we conclude that the Whalen analysis is not in line with our precedent of interpreting statutes for double jeopardy purposes.
[¶ 17.] Whalen departed from an abstract approach of applying the Blockburger test to the statutory elements and instead applied the test to how the crimes were actually charged. 445 U.S. at 694, 100 S.Ct. at 1439 (“In the present case, however, proof of rape is a necessary element of proof of the felony murder....”). See also id. at 711-12, 100 S.Ct. at 1448 (Rehnquist, J., dissenting) (noting that the majority opinion “chooses instead to apply the test to the indictment”). As indicated above, this Court has clearly stated that, when applying the Blockburger test to ascertain legislative intent, we do not consider how the offenses were proven at trial. Dillon, 2001 S.D. 97, ¶ 18, 632 N.W.2d at 44-45. See also Johnson, 2007 S.D. 86, ¶ 17, 739 N.W.2d at 7 (applying Blockburger to statutes in the abstract). “The test is whether the same act or transaction may constitute two distinct offenses if each offense as defined by statute requires the proof of some fact or element not required to establish the other.” Augustine, 2000 S.D. 93, ¶ 13, 614 N.W.2d at 798 (emphasis added) (quoting Seidschlaw, 304 N.W.2d at 106) (internal quotation marks omitted).
[¶ 18.] Our primary focus when determining legislative intent is on the language used in the statute. See, e.g., Lafferty, *841 2006 S.D. 50, ¶ 6, 716 N.W.2d at 784 (citing State v. Bordeaux, 2006 S.D. 12, ¶ 8, 710 N.W.2d 169, 172) (“The true intent of the Legislature is ascertained primarily from the language of the statute.”). Our traditional application of the Blockburger test leads to a consistent interpretation of legislative intent that keeps the statutory language creating the offenses at the forefront of the analysis, rather than focusing on how the offenses were charged in a particular case. We see no compelling reason to abandon this approach. As the Michigan Supreme Court noted:
[W]e must not lose sight of the fact that the Blockburger test is a tool to be used to ascertain legislative intent. Missouri v. Hunter, 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Because the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements.
People v. Ream, 481 Mich. 223, 750 N.W.2d 536, 545 (2008) (rejecting double jeopardy claim where the defendant was convicted of both felony murder and the predicate felony of criminal sexual conduct). We therefore decline Garza’s request to apply Whalen ⅛ conclusion that felony murder and the underlying felony are the same offense, under South Dakota law, for the purpose of imposing multiple punishments.
[¶ 19.] The conclusion that the Legislature intended felony murder and arson to be separate offenses is reinforced by the separate evils addressed by the homicide and arson statutes in South Dakota. “Statutes that are ‘directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments.’ ” Johnson, 2007 S.D. 86, ¶ 18, 739 N.W.2d at 8 (quoting Armendariz, 141 P.3d at 533-34). See also Albernaz, 450 U.S. at 343, 101 S.Ct. at 1144 (noting “separate evils” of drug importation and distribution as supporting a finding of no double jeopardy violation in a conviction for both). The homicide statutes seek to protect human life by prohibiting the killing of another human being. See SDCL chapter 22-16. The arson statutes encompass a similar concern for the protection of human life, especially by prohibiting the act of burning occupied structures. SDCL 22-33-1 (1995). However, arson also encompasses burning unoccupied structures, and even personal property.[6] These prohibitions demonstrate a legislative concern not only for human' life, but also for the property interests harmed by arson. This policy concern is not encompassed by the homicide statutes. These different societal interests addressed by the two offenses further support our conclusion that the Legislature intended to authorize cumulative punishment for violations of felony murder and the underlying felony of arson.
CONCLUSION .
[IT 20.] Under our application of the Blockburger test, felony murder and first-degree arson are not the “same offense” for the purpose of cumulative punishment analysis. The imposition of punishment under both statutes, in the same prosecution, does not exceed the punishment prescribed by the South Dakota Legislature and, consequently, does not violate the *842 Due Process Clause. Therefore, the circuit court was authorized by the Legislature to impose concurrent sentences for both crimes. Accordingly, we affirm the circuit court’s denial of Garza’s motion to correct an illegal sentence.
[¶ 21.] ZINTER, SEVERSON, and WILBUR, Justices, concur.
[¶ 22.] KONENKAMP, Justice, concurs in result.

. This is distinguishable from a timely direct appeal from a conviction, where a party raising double jeopardy concerns may properly challenge both the underlying conviction and the sentence imposed. See State v. Dillon, 2001 S.D. 97, ¶ 22, 632 N.W.2d 37, 46; State v. Well, 2000 S.D. 156, ¶ 25, 620 N.W.2d 192, 197.

. Our use of the Blockburger test in multiple-prosecution double jeopardy analysis actually predates the Blockburger decision. See State v. Caddy, 15 S.D. 167, 87 N.W. 927, 928 (1901) (quoting Morey, 108 Mass, at 434) ("A single act may be an offense against two statutes, and, if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.”). See also State v. Seidschlaw, 304 N.W.2d 102, 106-07 (S.D.1981) (noting that the United States Supreme Court’s Blockburger decision adopted a “similar test” to ours to determine whether there were two distinct offenses).

. The special writing argues that ”[i]t is not possible to prove felony murder under SDCL *839 22-16-4 without also proving arson under SDCL 22-33-1.” Yet, we held in Dillon that we examine "only the statutory elements comprising the offenses without regard to how the offenses were charged [.] ” 2001 S.D. 97, ¶ 18, 632 N.W.2d at 45 (emphasis added).

. The special writing disagrees with this statement, arguing that the United States Supreme Court has “consistently treated the conviction of a predicate felony for felony murder and a conviction of the felony murder charge itself as the same offense under the Double Jeopardy Clause.” However, both cases cited in support of this view involve multiple prosecutions rather than multiple punishments. As discussed above, the question of whether multiple punishments conform to the requirements of the Double Jeopardy Clause turns not on the federal application of the Blockburger test, but rather on the discernment of state legislative intent through state rules of construction.

. We note that the Whalen decision was barely one and one-half years old when we rejected its approach of examining the indictment, rather than the statutory text. Thus, we have never followed Whalen. See Simons, 313 N.W.2d at 467-68.

. SDCL 22-33-3 (1995) (prohibiting the burning of unoccupied structures and burning of personal property valued in excess of twenty-five dollars). The different societal interests protected by the homicide and arson statutes are highlighted in the case at bar. The owner and tenants of the building burned by Garza suffered significant harm to their property interests. At the same time, an unidentified person was killed as a result of Garza’s intentional act — a harm the homicide statutes aim to protect against.