#27342-a-DG

**2016 S.D. 14**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

DOMINIC CONTINO LADU,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK E. SALTER
Judge

* * * *

MARTY JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


BEAU J. BLOUIN of
Minnehaha County Public
  Defender's Office
Sioux Falls, South Dakota               Attorneys for defendant and
                                        appellant.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015

OPINION FILED **02/24/16**

GILBERTSON, Chief Justice

[¶1.]     Dominic Contino Ladu appeals from a judgment of conviction for aggravated assault and intentional damage to property.  Ladu maintains the circuit court erred in denying his motion for a judgment of acquittal on the intentional damage charge.  We affirm.

## BACKGROUND

[¶2.]     Ladu, Tiffany Kelsey, Wyatt Kelsey, and others celebrated the 4th of July drinking at Tiffany's apartment.  Ladu and Tiffany were dating.  Wyatt and Tiffany are brother and sister.  Wyatt lived with Tiffany in the apartment, although Tiffany was the only person on the lease.  Ladu did not live in the apartment with Tiffany and Wyatt.

[¶3.]     Ladu argued with another party-goer and Tiffany told him to leave.  Ladu eventually got into a car and left.  The other party-goers also left so Tiffany and Wyatt decided to visit their parents.  Before leaving the empty apartment, Tiffany locked the door.  Ladu did not have authority to be in the apartment after he was told to leave.

[¶4.]     While they were away, Tiffany and Wyatt received a phone call alerting them that someone was in their apartment.  Tiffany and Wyatt returned and found Ladu inside their apartment.  The apartment had been ransacked.  Ladu and Wyatt immediately engaged in a physical confrontation.  During a struggle to force Ladu out of the door, Ladu pulled out a .40 caliber handgun and cocked it.  Wyatt successfully forced him out the front door.  Once outside, Ladu

punched one of the apartment windows with his gun. The window shattered.[1] Ladu pointed his gun through the broken window and yelled at Tiffany. Tiffany ran outside and called 911. Ladu fled. The police apprehended him later that night.

[¶5.] A grand jury indicted Ladu on several charges including intentional damage to property in the third degree. The indictment alleged, in part, that Ladu "did, with specific intent to do so, injure, damage, or destroy private property, A WINDOW AT [Tiffany and Wyatt's address], in which another person, WYATT KELSEY has an interest, and without the consent of that person, which damage was in the amount of four hundred dollars or less . . . ." At trial, Ladu moved for a judgment of acquittal on the intentional damage charge asserting that Wyatt didn't have an interest in the window because he was not listed on the apartment lease. The circuit court denied the motion. The circuit court found that the State presented evidence that Tiffany had an interest in the window and permitted a variance between the indictment and the evidence presented at the trial.

[¶6.] The jury convicted Ladu of aggravated assault and intentional damage to property. The circuit court sentenced Ladu to 12 years in the penitentiary on the aggravated assault conviction and 30 days in the Minnehaha County Jail on the intentional damage conviction.[2] This appeal followed.

---

1. At trial, Tiffany testified that the window needed to be replaced and that she had not yet received the bill but believed it would be less than $400.

2. The circuit court suspended 7 years of the penitentiary sentence and the entire jail sentence.

## STANDARD OF REVIEW

[¶7.]    "We review de novo a trial court's denial of a motion for a judgment of acquittal and decide anew whether there is sufficient evidence in the record to sustain the conviction." *State v. Midland*, 2014 S.D. 98, ¶ 11, 858 N.W.2d 328, 331 (citations omitted). The evidence is "viewed in the light most favorable to the verdict." *State v. Johnson*, 2015 S.D. 7, ¶ 39, 860 N.W.2d 235, 250 (quoting *State v. Hauge*, 2013 S.D. 26, ¶ 12, 829 N.W.2d 145, 149). "We will not set aside a jury's verdict if the evidence presented, including all favorable inferences drawn from it, provides a rational theory that supports the jury's verdict." *Id.* (citation omitted).

## DECISION

[¶8.]    1.    *Whether the circuit court erred in permitting a variance between the criminal pleadings and the evidence presented at trial.*

[¶9.]    Ladu maintains that the circuit court erred in permitting a variance between the indictment that alleged Wyatt had an interest in the window and the evidence presented at trial that Tiffany had an interest in the window. The concept of variance in criminal pleadings is best explained in federal case law when compared to constructive amendments. "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States v. Thomas*, 791 F.3d 889, 897 (8th Cir. 2015) (quoting *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000)). Constructive amendments are reversible error. *Id.* Variances, on the other hand,

require reversal "only if the variance actually prejudiced the defendant." *Id.* (quoting *United States v. Begnaud*, 783 F.2d 144, 148 (8th Cir. 1986)).

[¶10.] This Court has applied the concept of variance in criminal cases. *See, e.g., State v. Reutter*, 374 N.W.2d 617, 623 (S.D. 1985); *State v. Blake*, 83 S.D. 359, 360, 159 N.W.2d 803, 804 (1968). In those cases, the Court instructed that "[a] variance between pleading and proof is not material in a criminal case unless it misleads the accused in making his defense, or may expose him to the danger of being again put in jeopardy for the same offense." *Blake*, 83 S.D. at 360, 159 N.W.2d at 804.

[¶11.] Ladu was not misled in making his defense. The indictment put Ladu on notice that he was being charged with intentional damage to property, that the property allegedly damaged was a window, and that the window was located at Tiffany and Wyatt's address. Ladu admitted that he recognized the discrepancy regarding Wyatt's interest in the window before the trial began. At the trial, Tiffany and Wyatt were both called as witnesses and Ladu had an opportunity to cross-examine each of them.

[¶12.] Ladu is not in danger of being prosecuted again for the same offense. The United States Constitution and the South Dakota Constitution protect against "a second prosecution for the same offense after conviction." *State v. Garza*, 2014 S.D. 67, ¶ 10, 854 N.W.2d 833, 837 (quoting *State v. Johnson*, 2007 S.D. 86, ¶ 12, 739 N.W.2d 1, 6). Ladu's conviction is a complete bar to a second prosecution for this offense.

[¶13.] Ladu attempts to distinguish the facts in his case from those presented in *Reutter*, 374 N.W.2d 617. He argues that the varied evidence presented in his case went to an essential element of the crime, while the varied evidence in *Reutter* did not.[3] Ladu's emphasis is misplaced. It is well-settled law that "[i]f a necessary allegation is made unnecessarily minute in [the] description [of the indictment], the proof must satisfy the descriptive as well as main part, since the one is essential to the identity of the other." *State v. Sudrala*, 79 S.D. 587, 589, 116 N.W.2d 243, 244 (1962) (quoting 2 Bishop's New Criminal Procedure, 2d Ed., § 485(2) (1917)). However, as far as a variance is concerned, this Court focuses on whether the defendant was prejudiced by the variance, not on whether the evidence presented was made a particularized essential element of the crime.[4] *Compare Sudrala*, 79 S.D. at 589-90, 116 N.W.2d at 244 (denying variance of a particularized essential element (brand of whiskey) because defendant was misled in preparing his defense) *with State v. Barber*, 83 S.D. 289, 291, 158 N.W.2d 870, 871 (1968) (permitting a

---

3. In *Reutter*, the defendant was charged with conspiracy to distribute a controlled substance in Minnehaha County. 374 N.W.2d at 622. At trial, the State presented additional evidence connecting the defendant to drug activities in California. *Id.* This Court found that the introduction of evidence concerning the defendant's activities in California was a permissible variance because the defendant was not misled in making his defense. *Id.* at 623.

4. Ladu states that "the scope of the theory of variance does not extend to permit the State to prove the crime was committed against a different victim than is alleged in the indictment." Ladu fails to cite authority for this conclusion. In *United States v. Good Shield*, the Eighth Circuit Court of Appeals permitted a variance between an indictment that alleged the defendant murdered Steven Charles Wright, Jr., and evidence presented at trial that the defendant murdered Steven Charles Wright, Sr. 515 F.2d 1, 1-3 (8th Cir. 1975).

#27342

variance of a particularized essential element (age of rape victim) because defendant was not prejudiced); *State v. Otto*, 529 N.W.2d 193, 196-97 (S.D. 1995) (permitting a variance of a particularized essential element (house owned by burglary victim) because defendant was not prejudiced). The variance in Ladu's case was immaterial because Ladu was not prejudiced.

[¶14.] 2. *Whether there was sufficient evidence to sustain Ladu's conviction for intentional damage to property.*

[¶15.] Ladu claims that there was insufficient evidence to sustain his conviction because the State failed to offer testimony from the owner of the window. Ladu concedes that he has no authority for his position, but argues that *State v. Rich*, 268 N.W.2d 603 (S.D. 1978), suggests that the State was required to prove ownership of the window and the owner's non-consent to the damage.

[¶16.] Initially, the plain language of the statute does not require the State to prove specific ownership. SDCL 22-34-1 provides in relevant part, "[a]ny person who, with specific intent to do so, injures, damages, or destroys[] [p]rivate property in which any other person has an interest, without the consent of the other person[] is guilty of intentional damage to property." Thus, the State must prove that "any other person has an interest" in the property and that person did not consent to the damage.

[¶17.] Moreover, *Rich* is distinguishable. In *Rich*, a property management employee testified that the Pennington County Housing Commission owned the housing unit that the defendant was accused of damaging, the cost to repair the damage, and "that there was no consent to the injury, damage, or destruction" of the public housing unit. 268 N.W.2d at 604-06. This Court determined that the

-6-

State failed to prove the non-consent element of the crime because there was nothing in the record indicating that the housing commission delegated its authority to withhold consent to the property management employee.[5] *Id.* at 606. In Ladu's case, Tiffany was the sole lessee of the apartment. Tiffany had an interest in the window because, as the lessee, she would be responsible for any damages to the apartment. Further, Tiffany testified that Ladu did not have authority to be in the apartment after he was told to leave. Based on the circumstances surrounding Ladu's unwanted presence at the apartment, the jury could have reasonably inferred Tiffany's non-consent to the damage.

[¶18.] Finally, Ladu contends that even if the circuit court did not err in permitting the variance, the evidence presented at his trial was still insufficient to sustain the jury's verdict. Tiffany testified that she was the sole lessee of the apartment, that Ladu shattered her window by punching it with a handgun, that Ladu did not have authority to be at the apartment, and that she had not yet received the repair bill for the window but believed it would be less than $400. All of the essential elements of SDCL 22-34-1 were met by, or a jury could reasonably infer from, Tiffany's testimony.

**CONCLUSION**

[¶19.] The circuit court did not err in permitting a variance between the indictment and the evidence presented at trial because Ladu was not prejudiced. The State was not required to prove specific ownership of the window and, in any

---

5.    The two dissenting Justices concluded that the jury could have inferred non-consent from the housing commission based on the nature of the damages. *Rich*, 268 at 606 (Porter, J., and Wollman, J., dissenting).

event, there was sufficient evidence in this case to prove that Tiffany had an interest in the damaged window. There was also sufficient evidence to sustain Ladu's conviction for intentional damage to property.

[¶20.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.