#30426-a-MES
**2024 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

BRANDON DEAN HAHN,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MATTHEW M. BROWN
Judge

* * * *

KYLE BEAUCHAMP of
Colbath and Sperlich
Rapid City, South Dakota             Attorneys for defendant and
                                     appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
Assistant Attorney General
Pierre, South Dakota                 Attorneys for plaintiff and
                                     appellee.

* * * *

ARGUED
MARCH 20, 2024
OPINION FILED **06/20/24**

SALTER, Justice

[¶1.]	A jury convicted Brandon Hahn of intentional damage to property with the damage amount totaling more than $1,000 but less than $2,500.  At trial, the circuit court denied Hahn's motion for judgment of acquittal, which was based on the theory that the State had not provided sufficient evidence of the fair market value of the property that was damaged.  Hahn appeals, arguing that the court erred when it denied his motion for judgment of acquittal because it did not apply what he believes to be the correct legal standard for determining damages.  We affirm.

## Factual and Procedural Background

[¶2.]	Shortly after midnight on August 24, 2021, 88-year-old Delores Moen was awakened by the sound of loud pounding and shouting at the front door of her Rapid City home.  Afraid, she fled out the back door and called for help.  Jason Pate, who was three houses away at the time, heard the disturbance and called the police.  Soon after, he observed a man, later identified as Brandon Hahn, jogging away from Delores' house.  Pate and Delores' next-door neighbor, who also observed Hahn, went to assist Delores and called the police again to provide Delores' address and a description of Hahn.

[¶3.]	Soon after the police arrived on the scene, Hahn reappeared in the area and was identified by Pate and Delores' next-door neighbor.  When officers confronted Hahn, he quickly became verbally combative.  They attempted to detain him while they conducted their investigation, but Hahn resisted their efforts.  After he was placed in the back of a patrol vehicle, officers noticed Hahn was attempting

to hurt himself. Additional officers were called to the scene, and, together, they applied a wrap device to restrain Hahn and prevent him from harming himself and others. Once they concluded their investigation, law enforcement officers determined there was sufficient evidence to arrest Hahn for the damage to Delores' property.[1]

[¶4.] A Pennington County grand jury returned an indictment charging Hahn with three counts: (1) intentional damage to property in the first degree in violation of SDCL 22-34-1(2), with damage amounting to more than $1,000 but less than or equal to $2,500 (a Class 6 felony); (2) obstructing a public officer in violation of SDCL 22-11-6; and (3) disorderly conduct in violation of SDCL 22-18-35(1), which the State later dismissed.

[¶5.] During the two-day jury trial, the State presented multiple witnesses, including Delores' neighbors, who testified about their observations during and after the incident, and the responding police officers, who testified about Hahn's aggressive conduct and their interactions with him. Hahn himself elected to testify and denied any responsibility for damaging the door. He testified that he had been walking to his mother's house when he was unjustifiably detained and arrested by police officers.

[¶6.] Many of the witnesses also testified about the damage to Delores' door. During her testimony, Delores explained that she and her family had built the

---

1. It appears that Hahn's conduct at Delores' house was random. Delores testified that she did not know Hahn, and there is no known connection between them or specific motivation for Hahn's actions. One of the arresting officers testified that Hahn appeared to be highly intoxicated.

home in 1962, though her son-in-law later testified that the home was constructed sometime in the 1970s. Regardless, the steel door was installed when the house was built and had never been replaced, according to Delores.

[¶7.] Delores' neighbor, Pate, also testified about the damaged door, which he believed "was pretty much destroyed." Pate had taken pictures of the damaged door on the night of the incident and described what was depicted in those photos to the jury.

[¶8.] Officer Kaleigh Crumb responded to the August 24 incident and also described the damaged door to the jury, noting decorative pieces had been broken off of the front of the door and that "the door frame itself was busted into little parts." Splintered pieces of the wooden doorframe had broken off and were located inside the home. Like Pate, Officer Crumb had taken photos of the damaged door, which she explained to the jury. One photo in particular depicted shoe prints on the door, which Officer Crumb believed to match Hahn's boots.

[¶9.] Kraig Moen, Delores' son, testified that he had filed an insurance claim for Delores and that Delores received payment from the insurance provider for the damage to the door. However, Hahn objected to the testimony concerning the amount of the claim and also to the admission of the insurance claim documents. The circuit court sustained these objections apparently on the basis that the insurance information had been belatedly disclosed by the State.

[¶10.] However, the State was able to introduce evidence of the insurance settlement for the door damage through another witness. Deborah Mudge, Delores' daughter, explained that she had been assisting Delores with her finances prior to

the incident. And while she had not personally filed an insurance claim, Deborah testified that Delores' homeowner's insurance policy had a $1,000 deductible and that she deposited a check issued by Delores' insurance carrier for $384 into Delores' bank account after the door was damaged in the August 24 incident. When asked on cross-examination if Deborah had "any information as to what the door was worth at the time that this all happened[,]"she responded, "Only the value that the insurance company placed on it."

[¶11.]        Deborah also testified about the $1,474-worth of out-of-pocket payments she made for repairs to the door prior to Delores receiving the insurance money. These included $300 for a carpenter to install the door frame; $599 for the door itself, lock set, and other materials necessary for repairs; and $575 for a "specially manufactured locking mechanism."

[¶12.]        Robert Mudge, Delores' son-in-law, testified that he had helped repair the doorway and replace the door, though he was not compensated for his labor. Robert explained he personally invested about two days-worth of time into locating materials and fixing the door, which involved extensive work by a carpenter to reconstruct the door frame and the area surrounding it. In Robert's view, the value of the door was what it cost to repair it, but, on cross-examination, he acknowledged that he "did not assess the actual value of what the door was the day of the incident[.]"

[¶13.]        At the end of the State's case-in-chief, Hahn moved for judgment of acquittal on the intentional damage to property charge. Hahn argued that the jury could not find that the value of the damaged door exceeded $1,000 because the State

had not established the fair market value of the door, which, he claimed, included depreciation. Hahn's theory, in essence, was that the cost to conduct repairs and replace the door was not the same as the fair market value of the door prior to the incident. In response, the State argued that the testimony of the various witnesses was sufficient for the jury to find the damage amount element of the intentional damage to property offense.

[¶14.] During an extended discussion with counsel on the damage amount topic, the circuit court referenced *State v. Rich*, 268 N.W.2d 603 (S.D. 1978). The court viewed the *Rich* decision as holding that the value of the property damaged should be used to satisfy the damage amount element and not the reasonable cost of repairs, which *Rich* described as a method for proving damages in a civil case. The court contrasted the apparent holding in *Rich* with South Dakota Pattern Jury Instruction No. 3-25-4, which provides, "The value of the damage to the property in question is equal to the value of reasonable repairs that will restore the property . . . ."

[¶15.] The circuit court specifically asked Hahn's counsel if South Dakota Pattern Jury Instruction No. 3-25-4 "would be an appropriate instruction to give?" Counsel responded indirectly by referring to a different pattern jury instruction, South Dakota Pattern Jury Instruction No. 3-25-5, which incorporates the market value method when the reasonable cost of repairs exceeds the value of the property.

[¶16.] Ultimately, the circuit court concluded that South Dakota Pattern Jury Instruction No. 3-25-4 which allows the State to prove the damage amount element through evidence of the cost of reasonable repairs was an accurate statement of the

law. The court found some support in our decision in *State v. Ladu*, 2016 S.D. 14, 876 N.W.2d 505, though the court acknowledged the value issue had not been squarely presented in *Ladu*.

[¶17.] This instruction, along with South Dakota Pattern Jury Instruction No. 3-25-5, were included in the circuit court's proposed jury instructions as Instructions No. 20 and 21. The record does not contain an instruction-by-instruction settling with the court and counsel, but the trial transcript does indicate that the court asked counsel for both parties if either had any objections to its proposed instructions. Neither did.

[¶18.] In addition to commenting upon the evidence relating to whether Hahn was the person who damaged Delores' door, the parties' closing argument also addressed the amount of the damage. The State pointed to the evidence of the unchallenged actual repair costs and the insurance settlement, both of which exceeded $1,000. Hahn claimed that the jury could not use the cost of repairs until it determined that they did not exceed the value of the property, and, because there was no evidence of the property's market value, Hahn contended the jury could not find the existence of the element.

[¶19.] The jury found Hahn guilty on both Count 1, intentional damage to property, and Count 2, obstruction of a public officer. Hahn later admitted to allegations in a part II information that he had previously been convicted of four felonies. The circuit court imposed an enhanced 15-year prison sentence on Count 1 with ten years suspended and a 30-day jail sentence on Count 2, which the court deemed served by crediting 30 days of Hahn's pretrial confinement.

[¶20.]     Hahn appeals, claiming that the circuit court erred when it denied his motion for judgment of acquittal on the intentional damage to property charge. Hahn's theory is that South Dakota Pattern Jury Instructions No. 3-25-4 and 3-25-5 (Instructions No. 20 and 21 at trial) cannot be properly applied by a jury without first establishing the fair market value of the property. And without evidence of the door's fair market value, Hahn asserts the court should have granted his motion for judgment of acquittal.

## Analysis and Decision

[¶21.]     "Denial of a motion for acquittal is reviewed de novo." *State v. Peltier*, 2023 S.D. 62, ¶ 24, 998 N.W.2d 333, 340 (quoting *State v. Smith*, 2023 S.D. 32, ¶ 45, 993 N.W.2d 576, 591). Likewise, "[a] question regarding the sufficiency of the evidence to sustain a conviction is reviewed de novo." *Id.* (quoting *State v. Kwai*, 2023 S.D. 42, ¶ 21, 994 N.W.2d 712, 718).

[¶22.]     When reviewing a motion for judgment of acquittal, "[w]e consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Manning*, 2023 S.D. 7, ¶ 27, 985 N.W.2d 743, 752 (quoting *State v. Nelson*, 2022 S.D. 12, ¶ 21, 970 N.W.2d 814, 823). "In doing so, we 'will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence.'" *Id.* (quoting *State v. Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d 301, 313). "This is because 'the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence.'" *Id.* (quoting *Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d at 313).

[¶23.] For this reason, we also "accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." *Id.* (quoting *Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d at 313). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (quoting *State v. Otobhiale*, 2022 S.D. 35, ¶ 37, 976 N.W.2d 759, 772).

[¶24.] Hahn was convicted of violating SDCL 22-34-1, which provides in relevant part:

> Any person who, with specific intent to do so, injures, damages, or destroys . . . (2) [p]rivate property in which any other person has an interest, without the consent of the other person; is guilty of intentional damage to property. . . . Intentional damage to property is a Class 6 felony if the *damage to property* is two thousand five hundred dollars or less, but more than one thousand dollars.

(Emphasis added.)

[¶25.] This statute is not the same intentional damage to property statute that was set out in our 1978 *Rich* decision. As is relevant to our discussion here, the provisions of the now-repealed SDCL 22-34-3.1 described in *Rich* differed from SDCL 22-34-1 in one particularly critical respect. Although both statutes were designed to criminalize the same type of conduct—intentionally damaging another's property without consent—the way the two statutes distinguish grades of relative severity is much different.

[¶26.] In *Rich*, we held that under SDCL 22-34-3.1, the difference between misdemeanor and felony intentional damage to property is determined by "the value of . . . [the damaged] property" and not by the damage *to the property*. 268 N.W.2d

at 605 (emphasis added). Applying this interpretation, we held that the market value of a damaged house should have been used to determine whether the defendant's conduct constituted a felony instead of the cost to repair the windows and doors that the defendant had damaged. There are plausible reasons to question whether this interpretation was correct, but we need not resolve that issue because the current version of SDCL 22-34-1 and the repeal of SDCL 22-34-3.1 have effectively abrogated this part of *Rich*.[2]

[¶27.] The text of SDCL 22-34-1 assesses the relative severity of a defendant's conduct by valuing the "damage to property"—not the value of the property, as *Rich* contemplated. *See Ladu*, 2016 S.D. 14, ¶ 18, 876 N.W.2d at 509 (acknowledging that a "repair bill" could suffice for evidence of damage to property); *see also* SDCL 22-35-1.1 (allowing "injuries, damages, or destruction resulting from violations of § 22-34-1 committed pursuant to one scheme or course of conduct may be aggregated to determine the degree of the offense").

[¶28.] Here, the circuit court relied upon South Dakota Pattern Jury Instructions No. 3-25-4 and 3-25-5 to instruct members of the jury on the damage element of SDCL 22-34-1:

> The value of the damage to the property in question is equal to the value of reasonable repairs that will restore the property to substantially the same condition as it was immediately prior to the damage.
>
> If you find the value of reasonable repairs exceeds the value of the property as it was immediately prior to the damage, then

---

2. The former SDCL 22-34-3.1 was enacted in 1971 and repealed in 1976, curiously, one year before it appears the conduct described in *Rich* was committed. Regardless, the Legislature enacted SDCL 22-34-1 in 1976 and included the "damage to property" language which has remained ever since.

you must find the amount of damage is equal to the fair market value of the property immediately prior to the damage.

[¶29.] On appeal, Hahn presents a legal challenge to the method for valuing damages under SDCL 22-34-1. In Hahn's view, *Rich* requires that the damage element for intentional damage to property can only be proven by evidence of the property's market value. Though he presented a similar argument to the circuit court, Hahn did not object to the court's damage instructions excerpted above, which allow the jury to determine the existence of the damage element using evidence of the reasonable cost of repairs. The State views this as a failure to preserve Hahn's damage issue for review. We disagree.

[¶30.] Hahn's argument is not that evidence of repairs can never be used to determine damages; he asserts that repair costs can be considered, but only after the State proves that these costs do not exceed the market value of the property. This view is based upon *Rich* and was illustrated during Hahn's closing argument:

> Instruction Number 21 talks about fair market value. If you find the value of reasonable repairs exceeds the value of the property as it was immediately prior to the damage, then you must find the amount of damage is equal to the fair market value of the property immediately prior to the damage. Ask yourself, what is the fair market value of this door? I don't know. You don't know. . . . This is an essential element that you must find to find him guilty.

[¶31.] However, the merits of this argument are not sustainable. First, Hahn's reliance upon *Rich* is misplaced for the reasons explained above. *Rich's* view that "[t]he plain terms of the [former SDCL 22-34-3.1]" meant the difference in the severity of the offense implicated only "the value of the property[,]" 268 N.W.2d at 605, and does not reflect an accurate statement of the current law. As the

intentional damage to property offense is now formulated in SDCL 22-34-1, the degree of criminal liability is focused on the "damage to property" and not the value of the property.[3]

[¶32.] And second, the principal focus of SDCL 22-34-1 is not the valuation of the damage to property but, rather, the criminal conduct that caused that damage. *See Willett v. State*, 826 P.2d 1142, 1144 (Alaska 1992) (stating that "[t]he critical element for valuation" is not the value of the damage but "the amount of damage caused by the defendant" and that damage "'relates to economic loss caused by the knowing infliction of damage' to the property of another" (citation omitted)); *see also* 54 C.J.S. *Malicious or Criminal Mischief or Damage to Property* § 6 (stating that "the value of the property damaged or destroyed is determined by the loss suffered by the victim"). In fact, "value" is not used in the text of SDCL 22-34-1.

[¶33.] Of course, quantifying the damage to property within statutory ranges set out in SDCL 22-34-1 is necessary to determine the grade of the offense. But this is not to say that the State must first prove the market value of the damaged property as a predicate to relying upon the reasonable cost of repairs, and this sequential argument Hahn makes is a holdover of *Rich's* abrogated market-value holding. Certainly, where the evidence adduced at trial would support a determination that the reasonable cost of repairs exceeds the market value of the property that was damaged, the defendant could seek an instruction that required

---

3. This current statutory focus on the value of the damage neutralizes what would appear to be a genuine potential for disparate and incongruent results under the rule expressed in *Rich*. For instance, under *Rich's* holding, a defendant could be convicted of a felony for even a slight amount of damage if it were inflicted on a valuable piece of property.

the jury to use the lower market value to determine the damage element. Nothing in SDCL 22-34-1, however, requires the State to affirmatively prove the market value of the property in all intentional damage to property cases as part of the damage to property element.[4]

[¶34.] Finally, we note that Hahn does not argue that the door's market value was actually below the $1,000 felony threshold of SDCL 22-34-1, and there is no proof or offer of proof to support such an assertion. Here, Hahn's challenge is much narrower—the State may not rely upon the cost of repairs without first proving the market value of the property.[5] Having rejected that argument, our legal analysis is at an end.

[¶35.] Judged correctly against the current legal standard for assessing damage to the property, we conclude that there was sufficient evidence for the jury

---

4. Also, Hahn's assertion that there was no evidence of the market value of Delores' damaged door does not appear sound. As recounted above, in response to Hahn's cross-examination question of asking about evidence of pre-incident value, Deborah stated, "Only the value that the insurance company placed on it."

5. On appeal, it seems as though Hahn may be seeking to broaden his argument with claims that the repair costs reflected for a new lock may not be reasonable or that the testimony relating to damage to the door was inferior because it was provided by lay people. Hahn did not challenge the reasonableness of the repair costs at trial, and he may not advance what is essentially an unpreserved weight-of-the evidence argument on appeal. Regardless, we note that other courts have allowed lay witnesses to testify about value of the property damage. *See, e.g.*, *Walker v. State*, 888 S.E.2d 624, 626–27 (Ga. 2023) (stating value of damage "may be established by several means[,]" including lay witness opinion when the witness had the opportunity to form a reliable opinion); *Campbell v. State*, 426 S.W.3d 780, 785 (Tex. Crim. App. 2014) (holding a property owner's testimony about what his insurance company paid him was sufficient evidence of value of the damage caused to his property).

to find that the damage Hahn caused to Delores' door was at least $1,000 but less than $2,500. Deborah Moen testified to spending $1,474 on repairs, and Delores' homeowner's insurer valued the loss at $1,384. Under the circumstances, the circuit court did not err by denying Hahn's motion for judgment of acquittal. We affirm.

[¶36.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.